■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD MASON, Appellant.—Appeal by defendant from (1) a judgment of the Supreme Court, Kings County, rendered October 28, 1977, convicting him of burglary in the third degree, upon a jury verdict, and imposing sentence, and (2) a judgment of the same court, rendered January 27, 1978, convicting him of robbery in the third degree, upon a plea of guilty, and imposing sentence. Judgment rendered January 27, 1978, affirmed. Judgment rendered October 28, 1977 reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. With respect to the judgment rendered October 28, 1977 it is our opinion that defendant was denied a fair trial by the improper efforts of the prosecutor to discredit the testimony of defendant's witness, one Frank Ramunni. At the trial, evidence was adduced by the prosecution that at about 5:30 A.M. on June 13, 1976, the police, responding to a radio run that a burglary was in progress at the subject service station located at 6130 New Utrecht Avenue, Brooklyn, observed upon arrival at such location that the large front window was broken, the station's office was in disarray, and defendant, arrested shortly thereafter, was attempting to exit from the garage through a broken side window. The arresting officer testified that after being given his rights defendant stated "My friend Jimmy got away." Testimony was also adduced from a co-owner of the station that upon inspection, after the occurrence, he noticed that two cases of antifreeze and approximately $50 in cash were missing. The gist of Frank Ramunni's testimony on behalf of defendant was that on the night in question, defendant, who was drunk and an acquaintance of his, needed a place to sleep. Ramunni told defendant to follow him to the service station where he (Ramunni) worked so that defendant could get some sleep. According to Ramunni, defendant followed him to the station, and, at Ramunni's suggestion, entered it by climbing through a broken window. Ramunni also testified that a day or two later while cleaning up at the station he found

some money which one of the owners believed was taken during the alleged burglary. During the cross-examination of Ramunni the prosecutor asked him whether, *inter alia,* he had ever told the arresting officer or anyone else, either at the police precinct or at the District Attorney's office, about allowing defendant to sleep at the service station. The prosecutor also questioned Ramunni about his refusing to go downstairs at the courthouse with him and make a statement unless the prosecutor first obtained a subpoena. Moreover, during summation, the prosecutor alluded to the fact that Ramunni had failed to go to the police or the District Attorney initially and refused to talk to him about the case, but instead waited and cooperated with the defendant and his attorney. Also during his summation, the prosecutor strongly intimated, without any factual basis, that the reason Ramunni waited until the trial before coming forth was that he was involved with defendant in the commission of the alleged burglary. In our opinion the tactics of the prosecutor in his endeavors to implant in the jurors' minds the baseless proposition that the testimony of Ramunni was unworthy of belief solely because it was rendered for defendant were fundamentally unfair and highly prejudicial. As this court indicated in *People v Hamlin* (58 AD2d 631, 632), no inference should be drawn from a person not going to the police or District Attorney upon learning that a defendant has been arrested for a crime committed at a time when that person can provide testimony of an exculpatory nature. Silence by a witness for the defense may not be used as a means of discrediting the witness either upon cross-examination or during the People's summation *(People v Smoot,* 59 AD2d 898). We also believe that since no tangible evidence was adduced at the trial that Ramunni was criminally involved in the alleged burglary, the statement of the prosecutor on summation strongly implying such, was highly improper and likewise prejudicial. A prosecutor has no right to refer to matters not in evidence or to ask a jury to draw a conclusion not fairly inferable from the evidence *(People v Wright,* 41 NY2d 172). It is reversible error for a prosecutor to speculate on matters not in evidence *(People v Allen,* 26 AD2d 573; cf. *People v Ashwal,* 39 NY2d 105). The trial court did give curative instructions to the jury in an effort to counterbalance the prejudicial effect of the prosecutor's actions. Moreover, had the evidence of guilt been overwhelming, we might have affirmed the conviction on the ground that defendant had not been substantially prejudiced (see *United States v Young,* 463 F2d 934). However, since the testimony of Ramunni was neither incredible nor unbelievable and raised sharp questions of fact, we reverse and order a new trial. Mollen, P. J., Hopkins, Damiani, Titone and Shapiro, JJ., concur.