**Charles COOPER, Petitioner,**

v.

**Thomas R. ISRAEL, et al., Respondents.**

**No. 81–C–1366.**

United States District Court,
E. D. Wisconsin.

April 26, 1982.

---

Shellow & Shellow, Milwaukee, Wis., for petitioner.

Bronson C. LaFollette, Wis. Atty. Gen. by Thomas J. Balistreri, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

Charles Cooper petitioned for a writ of habeas corpus, alleging that the jury instructions on the issue of intent used at his trial violated his due process rights. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Mr. Cooper was convicted of attempted murder and armed robbery after a jury trial in circuit court for Racine County, Wisconsin; a judgment of conviction was entered on May 17, 1976. He was sentenced to thirty years on the attempted murder count and ten years on the armed robbery count; the sentences were consecutive.

Mr. Cooper contends that the following language in the instruction on intent to kill violated his due process rights:

"When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all the natural, probable and usual consequences of his deliberate acts." Tr., p. 251.

The court of appeals for this circuit has recently considered the constitutionality of the use of the above language when instructing a jury on the element of intent. *Pigee v. Israel*, 670 F.2d 690 (7th Cir. 1982). The court found "that the challenged instruction on intent posed no risk that Petitioner's conviction failed to satisfy the Fourteenth Amendment's requirement that a state prove every element of a criminal offense beyond a reasonable doubt." *Id.*, at 697. I have considered the matters raised in Mr. Cooper's petition, and I am satisfied that *Pigee* directly meets his arguments. Thus *Pigee* must be viewed as controlling. The presumption as applied to the facts of this case was entirely rational. Therefore, Mr. Cooper's petition must be dismissed.

Even in the absence of *Pigee*, I would not grant Mr. Cooper's petition. The transcript of Mr. Cooper's trial reveals that he was charged with the armed robbery of a grocery store in Racine and the assault on the store's proprietor. On February 16, 1976, the proprietor, Roy F. Veto, was working in his store when two men entered; one of the men approached him and asked for his assistance. Mr. Veto identified this man as Mr. Cooper. Tr., pp. 23–24. Shortly after asking Mr. Veto's help, the man opened his

coat and "said this was an armed robbery." Tr., p. 26. Mr. Veto saw that the man had a wooden-handled knife with a blade about six to seven inches long in his pants. The man grabbed Mr. Veto by the arm and took him over to the cash register. After Mr. Veto opened the register, the other man took the money out of it. The men then turned Mr. Veto around, and the man with the money hit Mr. Veto on the head, knocking him to the floor. The man with the knife then stabbed Mr. Veto five times; three of the wounds were to the stomach. The men then left. Tr., pp. 26–30. The doctor who treated Mr. Veto for his wounds testified that at least two of the stomach wounds would have been fatal if they had not been treated. Tr., p. 191. Other witnesses testified to facts that tended to link Mr. Cooper to the crime.

Mr. Cooper testified at trial that he had never been in Mr. Veto's store. Tr., pp. 145–46. He presented extensive testimony about his whereabouts during the robbery; portions of his testimony were corroborated by other witnesses. Certain defense witnesses also disputed the state's evidence regarding Mr. Cooper's car, a key piece of evidence tying Mr. Cooper to the crime. In his closing statement, defense counsel contended that it was not Mr. Cooper who had robbed the store. He argued: "[T]his case revolved down to two identifications and that's all it is...." Tr., p. 216. He also suggested that Mr. Veto was mistaken in his identification of Mr. Cooper. Tr., pp. 223–24. He stated: "I have no doubt from listening to Mr. Veto that person probably looked like Mr. Cooper, but it was not Charles Cooper." Tr., p. 224. It is apparent from the closing remarks of Mr. Cooper's attorney, the witnesses presented by Mr. Cooper, and the cross-examination of the state's witnesses, that the major, if not the only, issue at Mr. Cooper's trial was one of identification—whether Mr. Cooper was the man who stabbed Mr. Veto.

I have previously held that the use of the above jury instruction

"... does not require issuance of the writ either (1) if intent was not the central issue at trial, or (2) if intent was the issue but there is nevertheless strong evidence of intent contradicted only by the defendant's incredible assertions to the contrary." *Boyer v. Israel*, 515 F.Supp. 1369, 1374 (E.D. Wis. 1981); *accord, Austin v. Israel*, 516 F.Supp. 461 (E.D. Wis. 1981); *Ross v. Israel*, 503 F.Supp. 131.(E.D. Wis. 1980); *Genova v. Beuhler*, No. 80–C–802 (E.D. Wis., March 4, 1981).

Mr. Cooper's vigorous challenge to the state's contention that he was the attacker demonstrates that identification was the major issue at trial. On that crucial issue, the jury found against Mr. Cooper. The use of the challenged jury instruction, even if error, could not have affected the jury's deliberations on that issue. Thus, any error in using the instruction would have been harmless beyond a reasonable doubt. *Accord, Ross, supra*, at 133–34.

Mr. Cooper quotes a passage of his trial attorney's closing remarks that he contends demonstrates that intent was in issue at his trial. *See* petitioner's brief, filed December 23, 1981, pp. 6–7; Tr., pp. 235–37. The respondent argues that this passage is part of Mr. Cooper's effort to demonstrate that he did not commit the crime. I agree, but I need not resolve that issue. Assuming, *arguendo*, that the passage cited by Mr. Cooper did place the matter of intent in issue at the trial, I find that use of the instruction was still harmless error beyond a reasonable doubt. The evidence regarding the viciousness of the assault on Mr. Veto stands virtually uncontroverted at trial. The record is replete with strong, even overwhelming, evidence that the stabber intended to kill Mr. Veto. This case is readily distinguishable from the case of *Austin v. Israel*, 516 F.Supp. 461 (E.D. Wis. 1981). *See Drinkwater v. Gagnon*, 521 F.Supp. 1309 (E.D. Wis. 1981); *Boyer, supra; Phifer v. Israel*, No. 81–C–586 (E.D. Wis., November 4, 1981); *Bedford v. Gagnon*, No. 80–C–1078 (E.D. Wis., October 29, 1981); *Wesley v. Israel*, No. 80–C–937 (E.D. Wis., June 15, 1981).

Mr. Cooper also suggests that the use of the instruction affected the jury's delibera-

tions on the conviction for armed robbery. Assuming, *arguendo*, that the use of the instruction infringed on Mr. Cooper's due process rights and was not harmless error, I find that the instruction had no effect on Mr. Cooper's conviction for armed robbery. The instruction was included only in the section of the instructions dealing with the attempted murder count. I do not believe that reasonable jurors hearing the instructions read would have applied the challenged instruction to their deliberations on the armed robbery count. *Accord, Austin, supra,* at 469.

Therefore, IT IS ORDERED that the petition of Charles Cooper for a writ of habeas corpus be and hereby is denied.

IT IS ALSO ORDERED that this action be and hereby is dismissed.